IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ROBERT NEWTON MORRIS                                                                           PLAINTIFF

v.                                    Civil No. 12-2317

CAROLYN W. COLVIN[1], Commissioner
Social Security Administration                                                                  DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Robert Morris, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.    Procedural Background:**

Plaintiff filed his DIB and SSI application on April 5, 2010, alleging an onset date of March 30, 2010, due to back and ankle pain, diarrhea secondary to colitis, and depression. Tr. 11, 63-69, 94-95, 109, 112, 113, 122-128, 131, 141. The Commissioner denied Plaintiff's applications initially and on reconsideration. An administrative hearing was held on March 29, 2011. Tr. 272-312. Plaintiff was present and represented by counsel.

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

At the time of the hearing, Plaintiff was 46 years old and possessed the equivalent of a high school education. Tr. 132, 276, 291. He has past relevant work ("PRW") experience as a mechanic rebuilding engines and an ATV mechanic. Tr. 27-28, 96, 133, 143, 241, 277-284, 296-297.

On October 12, 2011, the ALJ found Plaintiff's degenerative disk disease ("DDD") of the lumbar spine, osteoarthritis of the ankles, colitis, mood disorder/depressive disorder secondary to his medical condition, anxiety disorder, borderline intellectual functioning, and a history of alcohol and marijuana abuse in recent to be severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 11-22. After partially discrediting Plaintiff's subjective complaints, the ALJ determined that he retained the residual functional capacity ("RFC") to perform sedentary work involving only occasional climbing, balancing, stooping, kneeling, crouching, and crawling and work where the interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote with few variables and use of little judgment, and the supervision required is simple, direct, and concrete. Tr. 15-20. The ALJ then concluded that Plaintiff could perform work as an assembly worker, escort vehicle driver, and addressing clerk. Tr. 21.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on October 19, 2012. Tr. 6-7. Subsequently, Plaintiff filed this action. ECF No. 1. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 11, 12.

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and are repeated here only to the extent necessary.

**II.     Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that has lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

3

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)-(f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.  Discussion:

Plaintiff contends that the ALJ made the following errors: 1) failing to find that Plaintiff's depression and anxiety meet the requirements of Listing 12.06; 2) failing to find Plaintiff's multiple impairments meet the required definition of disability; 3) rejecting the opinion of Plaintiff's long-term treating physician Dr. Fisher; 4) summarily concluding Plaintiff could perform the exertional demands of light, unskilled, sedentary work; and, 5) concluding that there is other work in the national economy Plaintiff could perform.

### A.  Listing 12.06:

Plaintiff contends that his anxiety disorder is so severe that it meets the requirement of Listing 12.06. Specifically, he contends that he suffers from

> recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week, and

4

>    1. Marked restriction of activities of daily living; or
>    2. Marked difficulties in maintaining social functioning; or
>    3. Marked difficulties in maintaining concentration, persistence, or pace.

Listing 12.06.  In support of this assertion, Plaintiff states that he was treated at Counseling and Associates for anxiety and depression, and it was noted that he experienced panic, racing thoughts, confusion, decreased concentration, feelings of worthlessness, and sleeplessness.  Tr. 210-217.  He also points to his testimony that he rarely leaves his house, does not trust others, and has difficulty getting along with others.

While we agree that Plaintiff has been diagnosed with both depression and anxiety, we do not find that his impairment meets the severity of Listing 12.06.  Records do indicate that Plaintiff has been treated for depression and anxiety by his primary care physician, Dr. Laurie Fisher.  Tr. 182, 185, 253.  In November 2009, Dr. Fisher treated him for depression, "lots of anxiety", and anger issues related to his inability to work.  Tr. 184-185.  She prescribed Citalopram.  On January 12, 2010, Dr. Fisher noted that Plaintiff's anxiety and depression were controlled.   In June 2010, she prescribed Venlafaxine and Trazodone.  Tr. 179.  However, it appears that he had a reaction to the Venlafaxine.  On September 10, 2010, he presented in the emergency room with complaints of a headache and a fear of losing his memory.  Tr. 233-250. His wife reported that he had been erratic for approximately three weeks.  And, following a negative CT scan of his brain, it was noted that he had recently begun taking a new antidepressant.

On February 16, 2011, Plaintiff began treatment at Counseling Associates.  Tr. 204-217. And, we note he received treatment at Counseling Associates on only four occasions.  He reported problems with memory and concentration, feelings of worthlessness, and racing

5

thoughts. Plaintiff was ultimately diagnosed with depression and anxiety for which therapy and medication management were prescribed. And, he was assessed with a global assessment of functioning score of 55, which is indicative of only moderate symptoms.

On February 17, 2011, Dr. Fisher noted that Plaintiff had experienced a reaction to Venlafaxine, which reportedly led to an altercation with police, a terroristic threat charge, and a sentence to drug rehabilitation at the Freedom House. Tr. 253-254. Since that time, he stated that he had been experiencing extreme anxiety and nervousness. Dr. Fisher referred him to Dr. Pennington at Counseling Associates. And, on February 22, 2011, Plaintiff's medication was switched to Buspar. Tr. 209.

In February 2011, Dr. Fisher also completed an attending physician statement indicating that she had been treating Plaintiff for lower back pain, chronic foot pain, anxiety, and depression. Tr. 202, 221. Dr. Fisher was of the opinion that it was severe enough to interfere with his attention and concentration, would affect his ability to tolerate work stress, would require him to take unscheduled breaks, and would cause him to miss more than four days of work per month. She also indicated that she did not expect a fundamental or marked change for the better in the future.

On May 18, 2011, Plaintiff underwent a mental evaluation with Dr. Patricia Walz. Tr. 263-269. She diagnosed him with depression secondary to chronic pain, a history of alcohol and cannabis abuse in remission, and borderline intellectual functioning, and assessed him with a global assessment of functioning score of 55-60. He told the doctor that he experienced one anxiety attack per week, lasting only 10-15 minutes. Dr. Walz noted that Plaintiff's social skills were adequate, his speech was clear and intelligible, and he persisted well, but his attention and

concentration were low average and his speed of information processing slow.  His full scale IQ was also noted to be in the borderline range, but Dr. Walz found him capable of performing the typical cognitive demands of basic work-like tasks.

At the administrative hearing, Plaintiff testified that his panic attacks had actually decreased in both frequency and intensity.  Tr. 297-298.  And, he reported experiencing an average of one panic attack per week.  *See Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir. 2003) (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling).  Plaintiff also indicated that he could care for his personal hygiene, prepare simple meals, drive, go shopping with his wife, go out alone, pay bills, balance a checkbook, watch television six hours per day, attend church, and visit with family (stepson and mother-in-law) and a few friends who come to his house.  Tr. 86-93, 299.  Further, he reported the ability to get along with others and follow instructions.

After reviewing the evidence of record, the undersigned finds substantial evidence to support the ALJ's conclusion that the Plaintiff has only mild restriction in activities of daily living and moderate limitations in social functioning and concentration, persistence, or pace.  And, as such, Plaintiff does not meet the requirements of Listing 12.06.

  **B.**  **Combination of Impairments:**

Plaintiff also asserts that the ALJ erred in failing to consider his degenerative disk disease of the lumbar spine, osteoarthritis of the ankles, colitis, mood disorder/depressive disorder secondary to his medical condition, anxiety disorder, and borderline intellectual functioning in combination.  In determining whether Plaintiff's mental or physical impairment or impairments are of sufficient medical severity that such impairment or impairments could be the basis of

eligibility under the law, the ALJ is to consider the combined effect of all impairments, without regard to whether any such impairment, if considered separately, would be of sufficient severity. 20 C.F.R. § 404.1523.

The evidence reveals that Plaintiff has been treated conservatively for chronic lower back pain/lumbar disk disease, hypertension, colitis, chronic ankle pain, anxiety, and depression since 2008. *See Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (holding that treating physician's conservative treatment was inconsistent with plaintiff's allegations of disabling pain). In July 2008, Plaintiff was hospitalized for watery, blood diarrhea and abdominal cramps. Tr. 258-260. His condition improved with steroids, Pentasa, and antibiotics. A colonoscopy conducted on August 5, 2008, revealed evidence of colitis throughout the entire colon. Tr. 261.

It also appears that Plaintiff was involved in an ATV accident in 2008, resulting in chronic pain. Tr. 226. An MRI of his lumbar spine in October 2008 revealed a midline disk protrusion at the L4-5 level without compression of the thecal sack or exiting nerve roots, and bulging disks at the L3-4 and L5-S1. Tr. 257.

In March 2009, Plaintiff was treated for ulcerative colitis, hypertension, and diarrhea. Tr. 147. He was prescribed Pentasa. Tr. 147. And, in April 2009, he was treated for a spastic colon and hypertension. Tr. 146. The doctor prescribed Lisinopril, Omeprazole, Fluoxetine, and Hydrocodone.

In July 2009, Plaintiff was treated by Dr. Scott Kuykendall for colitis and ankle pain. Tr. 145. He was prescribed Miralax.

In September 2009, Dr. Fisher noted Plaintiff's complaints of epigastric discomfort after eating. Tr. 190. He had a history of colitis which had been treated by steroids. Subsequently,

Plaintiff was treated by gastroenterologist Dr. Richardson, who ran tests and concluded Plaintiff's colitis had resolved. Accordingly, Dr. Fisher ordered an EGD, which revealed dyspepsia. Tr. 154-159.

In November 2009, Dr. Fisher diagnosed Plaintiff with hypertension, hyperlipidemia, colitis, and chronic diarrhea. Tr. 184-185. An examination revealed tenderness over the mid-sternal area. Dr. Fisher diagnosed Plaintiff with chronic lumbar disk disease with chronic pain, anxiety and depression, uncontrolled hypertension, and chest wall pain. She prescribed Norco, moist heat, Lisinoprol/Hydrochlorothiazide, Citalopram, Pentasa, and added fiber.

On January 12, 2010, Dr. Fisher prescribed Prednisone and Norco to treat Plaintiff's chronic lumbar disk disease. Tr. 182-183. On April 9, 2010, Dr. Fisher administered a Celestone injection for a recent increase in back pain. Tr. 180. She also refilled his Hydrocodone prescription, and noted that he had quit drinking. In June 2010, Plaintiff reported that he had tried to go back to work, but was unable to sustain. He continued to experience chronic pain with mild radiculopathy into his legs and episodic abdominal pain associated with diarrhea. Tr. 179. On examination, Dr. Fisher noted mild tenderness to palpation of the back. She directed him to stop the Citalopram, and prescribed Venlafaxine, Trazodone, and Cyclobenzaprine.

On June 2 and 16, 2010, Plaintiff was examined by Dr. Danny Aquilar of the Aquilar Foot Clinic. Tr. 197-198, 287. X-rays showed mild arthritic changes of the ankles bilaterally with spurring of the distal fibula or the right ankle. Dr. Aquilar diagnosed Plaintiff with arthritis of the ankles bilaterally with instability and a bone spur on the right fibula. He administered a Corticosteroid injection of Depo-Medrol into the right ankle to decrease inflammation, and

prescribed ankle braces in order to stabilize the ankles. Plaintiff did not return until August 2010, at which time he reported a significant decrease in his pain. There is no further evidence to document treatment for foot/ankle pain.

On September 29, 2010, Plaintiff reported that he had been exercising quite a bit and had lost 30 pounds since the previous year. Tr. 219, 255. However, he complained of continued lower back pain radiating into his left hip. Dr. Fisher prescribed Hydrocodone.

On April 8, 2011, Plaintiff was examined by Dr. Thomas Cheyne. Tr. 226-227. He noted tenderness in the mid-lower back and difficulty walking on his toes and heels. X-rays of his ankles revealed mild to moderate degenerative arthritis. Tr. 229. On April 11, 2011, an MRI of Plaintiff's lumbar spine revealed a broad based bulge at the L4-5 level, a central disk bulge at the L3-4 level, and a central disk bulge at the L5-S1 level. Tr. 224. On April 15, 2011, Plaintiff also complained of thoracic pain. Tr. 223. However, Dr. Cheyne noted it was most likely due to mild fascitis, but Plaintiff was unable to take non-steroidal anti-inflammatories because of his colitis. Therefore, he prescribed a second epidural steroidal injection. It does not, however, appear that Plaintiff ever returned to receive this injection.

After reviewing the evidence, the ALJ concluded that, although severe, Plaintiff's combination of impairments did not render Plaintiff disabled. And, we agree. Plaintiff has received only conservative treatment for all of his impairments. He was prescribed pain medication and muscle relaxers to treat his back pain, steroid injections for his back and ankle pain, ankle braces to support his ankles, and medication to treat his colitis, hypertension, and anxiety/depression. There is, however, no indication that any of Plaintiff's impairments necessitated hospitalization, surgical intervention, or emergency treatment during the relevant

time period. Instead, they all appear to have responded to treatment via medication. *See Patrick*, 323 F.3d at 592.

We can also ascertain no physician imposed physical or mental limitations, aside from the assessment Dr. Fisher completed at Plaintiff's request. *See Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (none of the claimant's treating physicians opined the claimant was so impaired or disabled that the claimant could not work at any job). And, there are some significant gaps in treatment that call into question the true severity of Plaintiff's impairments. *See Edwards v. Barnhart*, 314 F.3d at 967 (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment). Further, we note Plaintiff's own reports of activities to include walking for 30 minutes every other day, watching television for 6 hours per day, caring for his pet, caring for his personal hygiene, preparing simple meals daily, helping mow and clean, and driving, do not support his contention that his impairments, when combined, render him disabled. Tr. 265.

As for Plaintiff's borderline intellectual functioning, we note that Plaintiff was still able to graduate from high school and perform substantial gainful employment until his alleged onset date. Given the nature of his past relevant work, we believe he possessed the ability to perform work-related activities and adapt accordingly. Therefore, we believe that his intellectual capacity is adequately included in the ALJ's conclusion Plaintiff could perform simple, unskilled work involving tasks learned and performed by rote and requiring little judgment and simple, direct, and concrete supervision. *See Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) (holding that describing a claimant as capable of doing only simple work adequately accounts for borderline intellectual functioning).

### C.   Treating Physician's Statement:

In his third point of error, Plaintiff alleges that the ALJ improperly dismissed the medical source statement submitted by Dr. Fisher.  Generally, a treating physician's opinion is given more weight than other sources in a disability proceeding.  20 C.F.R. § 404.1527(c)(2).  Indeed, when the treating physician's opinion is supported by proper medical testing, and is not inconsistent with other substantial evidence in the record, the ALJ must give the opinion controlling weight. *Id*.  "However, [a]n ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (alteration in original) (internal quotation omitted).  Ultimately, the ALJ must "give good reasons" to explain the weight given the treating physician's opinion. 20 C.F.R. § 404.1527(c)(2).

The undersigned is of the opinion that Dr. Fisher's opinion was not entitled to substantial weight.  The ALJ correctly concluded that Dr. Fisher's opinion was speculative and not supported by any specifically noted objective findings. Dr. Fisher's treatment notes make no mention of any such limitations.  And, the record fails to establish that Plaintiff's mental impairments were severe enough to warrant inpatient hospitalization, or that his back or ankle problems necessitated surgical intervention.  In fact, Plaintiff indicated that his depression and anxiety had improved since he was switched to Buspar, and his back and ankle pain were not severe enough to warrant follow-ups with Dr. Cheyne for the second LESI he prescribed or Dr. Aquilar for additional ankle treatment.  Thus, while we do believe Plaintiff's impairments impact his ability to perform work-

AO72A
(Rev. 8/82)

related activities, we do not believe the overall record supports the severity of Dr. Fisher's medical source statement.

**D.    RFC:**

Next, Plaintiff opposes the ALJ's RFC determination. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009); *see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003); *see also Jones*, 619 F.3d at 971 (RFC finding must be supported by some medical evidence)

Plaintiff contends that the ALJ concluded that she could perform a range of light, unskilled, sedentary work. However, our review of the opinion reveals that the ALJ found Plaintiff could perform a limited range of sedentary work. Accordingly, his argument is

13

misplaced. And, for he reasons addressed in the preceeding paragraphs, we find that substantial evidence supports the ALJ determination that Plaintiff could perform a limited range of sedentary work.

### E.     Treating Physicians:

Lastly, Plaintiff disputes the ALJ's determination that work exists in significant numbers in the national economy that Plaintiff is capable of performing. Specifically, he contends that, due to Plaintiff's non-exertional impairments, the ALJ erred by failing to call a vocational expert. However, our review of the record reveals that the ALJ **did** call a vocational expert to testify. And, in response to a hypothetical question including the same limitations assessed by the ALJ in his RFC assessment, the expert testified that said individual could still perform work as an assembly worker (lampshade assembler, compact assembler, and shoe buckler and lacer), escort vehicle driver, and addressing clerk. Tr. 308. Accordingly, we find that the ALJ was entitled to rely upon the testimony of the vocational expert in determining Plaintiff could perform work that exists in significant numbers in the national economy. *See Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006) (ALJ's hypothetical question included all of Plaintiff's limitations found to exist by the ALJ and set forth in the ALJ's description of Plaintiff's RFC). And, said determination is also supported by substantial evidence.

### IV.    Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 11th day of December 2013.

/s/ J. Marschewski
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE